## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDUARD ZAVALUNOV, | : | Civil No. 3:18-cv-2438 |
| Plaintiff | : | (Judge Mariani) |
| v. | : | |
| WARDEN DOUGLAS K. WHITE, *et al.*, | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Eduard Zavalunov ("Zavalunov"), an inmate currently confined at the

Allenwood, Low Security Correctional Institution ("LSCI-Allenwood") in White Deer,

Pennsylvania, initiated this action pursuant to *Bivens*[1], 28 U.S.C. § 1331. (Doc. 1). Named

as Defendants are Warden Douglas K. White, the Federal Bureau of Prisons ("BOP"), and

John Doe. Presently pending before the Court is a motion to dismiss pursuant to Federal

Rule of Civil Procedure 12(b) and for summary judgment pursuant to Federal Rule of Civil

Procedure 56 filed by Defendants White and the BOP. (Doc. 19). For the reasons set forth

below, the Court will grant the motion.

Also pending before the Court is Zavalunov's motion (Doc. 26) for preliminary

injunctive relief. The Court will deny the motion for a preliminary injunction.

---

[1]     *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971) (holding that there exists
an implied private action for damages against federal officers alleged to have violated a citizen's
constitutional rights).

## I.    Allegations of the Complaint

Zavalunov contends that he is a "stateless person" and that he was improperly referred to Immigration and Customs Enforcement ("ICE") for deportation proceedings. (Doc. 1, p. 4).  He alleges that a detainer was negligently lodged against him without the required charging document, warrant, or deportation order.  (*Id.* at pp. 2, 4, 14).  Zavalunov avers that the ICE detainer precludes him from consideration for and participation in a Residential Reentry Center ("RRC"), and early release eligibility upon successful completion of the Residential Drug Abuse Treatment Program ("RDAP").  (*Id.* at 11).

Zavalunov alleges that Defendant White, in his official capacity as Warden, is responsible for ensuring compliance with all regulations and policies.  (*Id.* at p. 2).

For relief, Zavalunov seeks individual consideration for RRC placement, RDAP completion early release eligibility, and an injunctive order for LSCI-Allenwood not to honor a detainer request without appropriate documentation and a showing that an inmate presents a flight risk.  (*Id.* at pp. 17-19).

## II.    Statement of Undisputed Facts

Zavalunov is a federal inmate designated to LSCI-Allenwood.  (Doc. 20, Statement of Material Facts, ¶ 1; Doc. 23, Counterstatement of Material Facts, ¶ 1).  Zavalunov is serving a forty-month term of imprisonment for conspiracy to commit mail fraud, wire fraud, and healthcare fraud.  (*Id.* at ¶ 2).

On July 24, 2017, Zavalunov was designated to LSCI-Allenwood, in part, to participate in the on-site Institution Hearing Program ("IHP"). (Doc. 20 ¶ 3). The IHP is a coordinated effort between the BOP, ICE, and the Executive Office for Immigration Review ("EOIR"), to provide for deportation, exclusion, or removal proceedings to sentenced aliens prior to sentence expiration. (*Id.* at ¶ 4). This process allows ICE to effect deportation removal immediately upon the completion of an inmate's term of imprisonment. (*Id.* at ¶ 5). When a program participant is designated to LSCI-Allenwood, the unit team notifies ICE and ICE interviews the inmate within thirty (30) days to determine IHP eligibility. (*Id.* at ¶ 6).

Pursuant to BOP Program Statement 5800.15, Correctional Systems Manual, warrants are not required when ICE files a federal detainer, and ordinarily, ICE will use their Immigration Detainer form. (*Id.* at ¶ 7). The BOP then generates a Detainer Action Letter to memorialize the receipt, acknowledgment, and verification of an ICE detainer. (*Id.*).

On September 7, 2017, an ICE Immigration Officer provided the BOP with a Warrant for Arrest of Alien and Immigration Detainer-Notice of Action pertaining to Zavalunov. (*Id.* at ¶ 8). These documents indicated that there was probable cause to believe that Zavalunov is removable from the United States based upon the pendency of ongoing removal proceedings against him. (*Id.*). The detainer instructed the BOP to notify ICE before Zavalunov is released from custody. (*Id.* at ¶ 9).

Zavalunov states that on October 15, 2017, an ICE Officer took his photograph and fingerprints. (Doc. 23 ¶ 3). Zavalunov asserts that the ICE Officer never informed him that he was deportable, that a detainer would be placed on him, or that there were any warrants in his file. (*Id.*).

On October 16, 2017, LSCI-Allenwood issued a Detainer Action Letter memorializing the filing of the detainer and noted that Zavalunov was tentatively scheduled to be released on June 18, 2020. (Doc. 20 ¶ 10). The Immigration Detainer served on Zavalunov notified him that the Department of Homeland Security ("DHS") placed the immigration detainer on him and served as notice to a law enforcement agency that DHS intends to assume custody of him after his release from custody. (*Id.* at ¶ 11). On October 16, 2017, Zavalunov received a copy of the Detainer Action Letter. (Doc. 23 ¶ 4). Zavalunov asserts that ICE Officials fabricated the documents in his immigration matter. (*Id.* at ¶¶ 6-13).

When an immigration hearing is conducted and concluded, ICE or EOIR staff will provide a copy of the hearing decision to institution staff and to the inmate. (Doc. 20 ¶ 12). If EOIR issues a delayed decision, a copy of the order will be mailed to institution staff and the inmate. (*Id.* at ¶ 13). When removal is not ordered at the conclusion of the administrative proceeding, a written copy of the final order is placed in the inmate's central file. (*Id.* at ¶ 14). If removal is ordered, a copy of the removal order is placed in the inmate's central file. (*Id.* at ¶ 15). If ICE declines to accept custody of the individual and

cancels the detainer, LSCI-Allenwood will complete a new Detainer Action Letter to remove the immigration detainer and release the inmate at the expiration of his sentence if no other detainer is on file. (*Id.* at ¶ 16).

A deportable alien is unqualified for the RDAP because he cannot participate in the transitional drug abuse treatment component of the program. (*Id.* at ¶ 17). The non-residential drug abuse program is available for deportable aliens. (*Id.* at ¶ 18).

On January 4, 2018, Zavalunov was determined to be unqualified to participate in the RDAP program due to his status as a deportable alien. (*Id.* at ¶ 19).

## III. Legal Standards

### A. Motion to Dismiss Standard

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words,

"[f]actual allegations must be enough to raise a right to relief above the speculative level."

*Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013)

(internal citations and quotation marks omitted). A court "take[s] as true all the factual

allegations in the Complaint and the reasonable inferences that can be drawn from those

facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v.*

*Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation

marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to
> determine the sufficiency of a complaint: First, the court must take note of the
> elements a plaintiff must plead to state a claim. Second, the court should
> identify allegations that, because they are no more than conclusions, are not
> entitled to the assumption of truth. Finally, where there are well-pleaded
> factual allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged - but it has not show[n] - that the

pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks

omitted). This "plausibility" determination will be a "context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." *Id.*

6

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## B.  Summary Judgment Standard

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a).  "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S.

at 248.  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  FED. R. CIV. P. 56(c)(1)(A)-(B).  In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record."  FED. R. CIV. P. 56(c)(3).  "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true."  *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."  *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007).  If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.  When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## IV.   Discussion

A *Bivens* action is the federal counterpart to an action filed under 42 U.S.C. § 1983.

*See Paton v. LaPrade*, 524 F.2d 82 (3d Cir.1975); *Farmer v. Carlson*, 685 F. Supp. 1335,

1338 (M.D. Pa. 1988).  Section 1983 of Title 42 of the United States Code offers private

citizens a cause of action for violations of federal law by state officials.  *See* 42 U.S.C. §

1983.  The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom,
> or usage, of any State or Territory or the District of Columbia, subjects, or
> causes to be subjected, any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper proceeding for
> redress. . . .

*Id.*; *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); *Kneipp v. Tedder*, 95

F.3d 1199, 1204 (3d Cir. 1996).  To state a claim under § 1983, a plaintiff must allege "the

violation of a right secured by the Constitution and laws of the United States, and must

show that the alleged deprivation was committed by a person acting under color of state

law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

**A.      Defendant White Lacks Sufficient Personal Involvement in the Alleged Violations**

Defendants argue that Zavalunov fails to state a claim against White because he lacks personal involvement in the alleged wrongs.  (Doc. 21, pp. 15-18).  To establish *Bivens* liability, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Individual liability can be imposed in a civil rights action only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . .  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207-08; *see also Rizzo v. Goode*, 423 U.S. 362 (1976); *Atkinson v. Taylor*, 316 F.3d 257 (3d Cir. 2003).  Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08.  Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. *Rode*, 845 F.2d at 1208.

Zavalunov asserts that Warden White is responsible for the oversight of daily operations, policy compliance, detainer processing, and RRC consideration. Zavalunov expressly alleges that Defendant White "has been delegated supervisory authority and power over the day to day operation of all aspects of the operation and management of Allenwood LSCI and its personnel." (Doc. 1, p. 2). It is clear that Zavalunov attempts to hold Defendant White liable based on his role as supervisor or Warden. Any attempt by Zavalunov to hold this Defendant liable for the actions of his subordinates is essentially an assertion of *respondeat superior* liability which seeks to hold him liable based on his supervisory role. This ground of constitutional liability has been squarely rejected by the courts. *See Rode*, 845 F.2d at 1207. Zavalunov has failed to establish that Defendant White was personally involved in the alleged violation of his rights. Accordingly, Defendant White is entitled to dismissal from this action to the extent that Zavalunov's claims against him rely on a *respondeat superior* theory of liability.

To the extent that Zavalunov sues Defendant White based on his participation in reviewing or signing his administrative remedies, this claim also fails. Participation in "after-the-fact" review of a grievance, or dissatisfaction with the response to an inmate's grievance, do not establish the involvement of officials and administrators in any underlying constitutional deprivation. *See Rode*, 845 F.2d at 1207 (supervisory liability where a defendant, after being informed of the violation through the filing of grievances, reports or

appeals, failed to take action to remedy the alleged wrong is not enough to show that the defendant has the necessary personal involvement); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (holding that allegations that prison officials responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying constitutional deprivation). An inmate cannot sustain a constitutional tort claim against prison supervisors based solely upon assertions that officials failed to adequately investigate or respond to his past grievances. Inmates do not have a constitutional right to a prison grievance system. *See Speight v. Sims*, 283 F. App'x 880 (3d Cir. 2008) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner."). Consequently, dissatisfaction with a response to an inmate's grievances does not support a constitutional claim. *See Alexander v. Gennarini*, 144 F. App'x 924 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for Section 1983 liability). Thus, insofar as Defendant White is sued in his capacity for reviewing Zavalunov's administrative remedies, dissatisfaction with responses to an inmate's grievances does not support a constitutional claim.

Furthermore, Zavalunov's conclusory statement that Defendant White is responsible for enforcement of policies and administrative procedures is not a sufficient allegation establishing his personal involvement. *See Daley v. Lappin*, 555 F. App'x 161, 168 (3d Cir. 2014) (inmate's allegation that BOP director instituted and implemented policy was

insufficient to make BOP director liable without evidence or plausible allegations that he actually caused or knew of and acquiesced in inmate's alleged injuries); *see also Parks v. Samuels*, 2015 WL 5954185, at *10 (M.D. Pa. 2015) (dismissing *Bivens* claim against defendants who allegedly "were personally involved through their roles as BOP officials and administrators, through their involvement as ranking officials charged with promulgating and administering BOP policy, and apparently failing to act favorably on [the inmate's] grievances or administrative remedies").

For all the foregoing reasons, the Court will grant Defendants' motion to dismiss based on lack of personal involvement of Defendant White.

### B. The ICE Detainer was Processed in Accordance with BOP Regulations

On July 24, 2017, Zavalunov was designated to LSCI-Allenwood to enable him to participate in the Institution Hearing Program. (Doc. 20 ¶ 3). As stated, the IHP is a coordinated effort between the BOP, ICE, and Executive Office for Immigration Review, to provide deportation, exclusion, or removal proceedings to sentenced aliens. (*Id.* at ¶ 6; Doc. 20-1, pp. 11-27).

BOP Program Statement 5800.15, Correctional Systems Manual, expressly states that "[w]arrants are not required when . . . ICE files a Federal detainer. Ordinarily, . . . ICE will use their Immigration Detainer form." (Doc. 20 ¶ 7; Doc. 20-1, p. 67, BOP Program Statement 5800.15, Ch. 6 § 604). The record reflects that on September 7, 2017, an ICE

13

Immigration Officer provided the BOP with a Warrant for Arrest of Alien and Immigration Detainer-Notice of Action pertaining to Zavalunov. (*Id.* at ¶ 8; Doc. 20-1, pp. 4-6, Immigration Detainer-Notice of Action; Doc. 20-1, p. 7, Warrant for Arrest of Alien). These documents indicated that there was probable cause to believe that Zavalunov is removable from the United States based on the pendency of ongoing removal proceedings against him. (*Id.*). The detainer instructed the BOP to notify ICE before Zavalunov is released from BOP custody, and that the DHS intends to assume custody of Zavalunov after his release from BOP custody. (Doc. 20 ¶¶ 9, 11; Doc. 20-1, p. 4).

In accordance with BOP Program Statement 5800.15, Correctional Systems Manual, the BOP then generated a Detainer Action Letter to memorialize the filing of the detainer. (Doc. 20-1, p. 66, BOP Program Statement 5800.15, Ch. 6 § 603). On October 16, 2017, LSCI-Allenwood issued a Detainer Action Letter noting that a detainer was filed against Zavalunov because DHS determined that probable cause exists to believe that he is a removable alien. (Doc. 20 ¶ 10; Doc. 20-1, p. 9, Detainer Action Letter). The Detainer Action Letter also indicated that Zavalunov was tentatively scheduled to be released on June 18, 2020. (*Id.*). Zavalunov acknowledges that he received a copy of the Detainer Action Letter on October 16, 2017. (Doc. 23 ¶ 4).

The undisputed evidence establishes that the BOP properly processed the ICE detainer in accordance with its policies. Zavalunov has failed to present any evidence in

support of his claim that the ICE detainer was fraudulently and illegally placed in his file.[2]

The Court will grant Defendants' motion with respect to any claim that the ICE detainer was improperly issued or processed.

### C. The *Heck* Doctrine Bars Zavalunov's Defective Detainer Claim

"[H]arm caused by actions whose unlawfulness would render a conviction or sentence invalid" is not cognizable in a civil rights action, unless the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). This is known as the "favorable termination rule." *Id.* *Heck* applies to claims involving monetary damages as well as those seeking equitable and declaratory relief. *See Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005). It also applies detainer actions. *See, e.g., Jackson v. Alt*, 236 F. App'x 850 (3d Cir. 2007); *McBride v. O'Brien*, 646 F. App'x 277, 278 (3d Cir. 2016) ("McBride seeks damages under § 1983 for his incarceration resulting from the issuance of a probation violation detainer. To the extent that McBride alleges that his

---

[2]    In his underling criminal case, Zavalunov filed a motion to correct his presentence report wherein he similarly argued that he is a non-deportable alien, and he requested an amendment to his presentence report to indicate that he is non-deportable. *United States v. Zavalunov*, No. 1:14-cr-773 (S.D.N.Y.), Doc. 432. Zavalunov argued that prison officials at LSCI-Allenwood incorrectly believed that he is a deportable alien, which precluded his eligibility for rehabilitation programs. *Id.* On December 17, 2018, the United States District Court for the Southern District of New York denied the motion and found that Zavalunov "provide[d] no support for his argument that the PSR contains misinformation as to his immigration status." *Id.*

confinement on the detainer violates federal law, a favorable outcome would necessarily demonstrate the invalidity of his detention.").

Zavalunov alleges that the ICE detainer is invalid and was negligently lodged against him without a charging document, warrant, or deportation order. Zavalunov has not established that his claims relating to his removal proceedings have been called into question by the granting of a federal habeas petition or by any of the other methods described in *Heck*. Because Zavalunov has not alleged that the pre-requisites of *Heck* have been met, his claims regarding the alleged defective detainer will be dismissed.

### D.     18 U.S.C § 3621(e)(2)(B) Early Release Benefit and RDAP

18 U.S.C. § 3621 directs the Bureau of Prisons to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b). Under 18 U.S.C. § 3621, eligible prisoners are able to participate in substance abuse programming and treatment available while incarcerated in federal institutions. 18 U.S.C. § 3621(b)(5), (e). An inmate may be "eligible" for a program such as the RDAP if he is (1) "determined by the Bureau of Prisons to have a substance abuse problem," and (2) "willing to participate in a residential substance abuse treatment program." 18 U.S.C. § 3621(e)(5)(B). As an incentive for prisoners to successfully complete a treatment program, Congress allowed for a potential

one-year sentence reduction, at the discretion of prison officials. 18 U.S.C. § 3621(e)(2)(A), (B).

There are three essential components to the RDAP program. The first component is a residential unit-based component. 28 C.F.R. § 550.53(a)(1). This component is comprised of a course of individual and group activities provided by a team of Drug Abuse Treatment Specialists and the Drug Abuse Program Coordinator inside the prison in a separate treatment unit apart from the general prison population. *Id.* Upon successful completion of the residential unit-based component, some inmates may be referred to a second component of this program. During this second phase of the RDAP program, inmates are given counseling support while they transition back into general population. 28 C.F.R. § 550.53(a)(2). The final phase of the RDAP program is the community Transitional Drug Abuse Treatment program. 28 C.F.R. § 550.53(a)(3). Inmates who have completed the unit-based program and follow-up treatment, and are transferred to community confinement, must successfully complete community-based drug abuse treatment in a community-based program in order to graduate from the RDAP program. *Id.* For an inmate to successfully complete all components of RDAP the prisoner must participate in the community-based programming. 28 C.F.R. § 550.56(a). Throughout the course of this treatment, prison officials exercise broad discretion in making RDAP programming decisions.

A deportable alien is unqualified for the RDAP because he cannot participate in the Transitional Drug Abuse Treatment component of the program. Pursuant to 28 C.F.R. § 550.55(b)(1), ICE detainees are not eligible for early release. Therefore, because an ICE detainee is not eligible for early release and cannot be transferred to community confinement, they cannot participate in the Transitional Drug Abuse Treatment component of the RDAP.

The record reflects that on September 7, 2017, an ICE Immigration Officer provided the BOP with a Warrant for Arrest of Alien and Immigration Detainer-Notice of Action indicating that there was probable cause to believe that Zavalunov is removable from the United States based upon the pendency of ongoing removal proceedings against him. (Doc. 20-1, pp. 4-7). The record further reflects that on January 4, 2018, Zavalunov was determined to be unqualified to participate in the RDAP due to his status as a deportable alien. (Doc. 20-1, p. 125). Zavalunov was properly excluded from the RDAP because inmates with an ICE detainer cannot participate in the community treatment program and consequently cannot be eligible for early release. *See* BOP Program Statement 5331.02 § 7(a), https://www.bop.gov/policy/progstat/5331_002.pdf (last visited February 12, 2020); BOP Program Statement 7310.04 § 10(f), https://www.bop.gov/policy/progstat/7310_004.pdf (last visited February 12, 2020). Although Zavalunov is not eligible for the residential drug abuse program, he has not been

precluded from participation in the non-residential drug abuse program during his incarceration.

Moreover, Zavalunov does not have a due process right to rehabilitative programs. It is well-settled that "inmates do not have a protected liberty interest in either RDAP participation or in the associated early release benefit." *Reeb v. Thomas*, 636 F.3d 1224, 1129 n. 4 (9th Cir. 2011), *citing Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) (determining that a prisoner does not have a constitutional right to be released prior to the expiration of a valid sentence).

In *Moody v. Daggett*, the United States Supreme Court addressed the inmate's argument that "the pending warrant and detainer adversely affect[ed] his prison classification and qualification for institutional programs." 429 U.S. 78, 88 n. 9 (1976). The Supreme Court declined to grant relief for the denial of such benefits that are left to the "full discretion" of prison officials, and so the inmate had "no legitimate statutory or constitutional entitlement sufficient to invoke due process." *Moody*, 429 U.S. at 88 n. 9; *see Becerra v. Miner*, 248 F. App'x 368, 370 (3d Cir. 2007) (inmate assigned public safety factor of "deportable alien" had no liberty interest in his consequential disqualification for certain institutional programs).

Additionally, Zavalunov has no due process liberty interest in early release following completion of the RDAP. Pursuant to Section 3621(e), and as an incentive for a prisoner's

successful completion of substance abuse treatment, "[t]he period a prisoner convicted of a

nonviolent offense remains in custody after successfully completing a treatment program

may be reduced by the Bureau of Prisons, but such reduction may not be more than one

year from the term the prisoner must otherwise serve." 18 U.S.C. § 3621(e)(2)(B). To

complete the BOP treatment program, and therefore to become eligible for early release, an

inmate must complete all phases of the treatment program, including the community

treatment component which follows the unit-based residential treatment program. 28 C.F.R.

§§ 550.53, 550.55. As stated, pursuant to BOP policy, inmates with a detainer cannot

participate in the community treatment program and thus cannot be eligible for early

release. *See* BOP Program Statement 5331.02 § 7(a), BOP Program Statement 7310.04 §

10(f).

Zavalunov's inability to pursue early release due to his detainer does not implicate

his due process rights because he has no liberty interest in a sentence reduction under

Section 3621(e). *See Becerra*, 248 F. App'x at 370; *Hugel v. Bledsoe*, No. 08-1050, 2009

WL 1406252, at *4 (M.D. Pa. May 18, 2009). The Due Process clause itself does not create

a liberty interest in early release under Section 3621(e) because his classification as a

deportable alien and its resulting consequences of disqualification for certain rehabilitative

programs, including the early release benefit, "is not outside what a prisoner 'may

reasonably expect to encounter as a result of his or her conviction in accordance with due

20

process of law.'" *Becerra*, 248 F. App'x at 370 (citing *Fraise v. Terhune*, 283 F.3d 506, 522 (3d Cir. 2002) (citations omitted)).  Nor does Section 3621(e) create a liberty interest, because the determination whether to release a particular inmate is left to the discretion of the BOP.  *See* 18 U.S.C. § 3621(e)(2)(B); *Lopez v. Davis*, 531 U.S. 230, 241 (2001) ("When an eligible prisoner successfully completes drug treatment, the Bureau thus has the authority, but not the duty, both to alter the prisoner's conditions of confinement and to reduce his term of imprisonment.").  Because Zavalunov does not have a protectable interest in his prison classification, his qualification for rehabilitative programs, or early release, he cannot establish a constitutional deprivation as a result of the existence of the detainer.  Defendants are entitled to an entry of judgment in their favor on this claim.

### E.    Equal Protection Claim

Zavalunov asserts that he was treated differently than "other non-foreign born individuals or non-jews." (Doc. 1, p. 14).  He appears to argue that his equal protection rights were violated because his immigration status prevents him from participating in the RDAP and precludes him from early release eligibility.  (*Id.*).

Courts have consistently recognized that the exclusion of prisoners subject to ICE detainers from participating in BOP rehabilitative programs and receiving early release benefits does not violate the Equal Protection Clause.[3]  BOP regulations providing for such

---

[3]    The Fourteenth Amendment's Equal Protection Clause applies to the federal government through the Fifth Amendment's Due Process Clause.  *See Bolling v. Sharpe*, 347 U.S. 497 (1954); *Abdul-*

programs and benefits classify prisoners not as aliens and non-aliens, but as those having

ICE detainers against them and those who do not. *See McLean v. Crabtree*, 173 F.3d

1176, 1185-86 (9th Cir. 1999); *Builes v. Warden Moshannon Valley Corr. Center*, 712 F.

App'x 132, 134 (3d Cir. 2017).

In reviewing an equal protection challenge to the BOP's classification of prisoners,

rational basis review is appropriate because the classification of prisoners by their eligibility

to participate in programs implicates neither a fundamental right nor a suspect class.

*Rublee v. Fleming*, 160 F.3d 213, 217 (5th Cir. 1998). The Equal Protection Clause

requires only that the classification rationally further a legitimate state interest. *See*

*Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992).

Applying rational basis review, excluding prisoners subject to detainers from

participating in programs involving custody issues, such as early release, is rationally

related to the BOP's legitimate interest in preventing such prisoners from fleeing. *See, e.g.,*

*Adeyeye v. Department of Homeland Sec.*, 198 F. App'x 196, 197 (3d Cir. 2006) (finding "no

basis to question the regulation providing for the categorical exclusion of certain inmates

[from the early release incentive provided under the substance abuse program] . . . as a

---

*Akbar v. McKelvie*, 239 F.3d 307, 316 (3d Cir. 2001) (en banc). "Aliens, even aliens whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments." *Plyler v. Doe*, 457 U.S. 202, 210 (1982). To state an equal protection claim, "a plaintiff must at a minimum allege that he was intentionally treated differently from others similarly situated by the defendant and that there was no rational basis for such treatment." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008).

legitimate exercise of the BOP's discretion" including prisoners subject to removal detainers); *Gallegos-Hernandez v. U.S.*, 688 F.3d 190, 195-96 (5th Cir. 2012) (exclusion of prisoners with ICE detainers from rehabilitative programs, or from halfway house placement, did not violate the equal protection clause, since alien prisoners, as an identifiable group, were not treated differently from other similarly situated prisoners who were not aliens); *McLean*, 173 F.3d at 1185-86 ("excluding prisoners with detainers from participating in the community-based treatment programs, and consequently from sentence reduction eligibility, is at least rationally related to the BOP's legitimate interest in preventing prisoners from fleeing detainers while participating in community treatment programs."). Additionally, the purpose of substance abuse rehabilitative programs is to reduce the likelihood of recidivism and drug abuse relapse and to reintegrate those inmates into society. Since inmates with ICE detainers will be turned over for deportation after their release, limiting the program to those without detainers is a legitimate government interest.

As discussed above, Zavalunov remains ineligible for RDAP participation and its early release benefits based on his status as a deportable alien. Zavalunov's ICE detainer, and the program limits associated with it, do not violate the Equal Protection Clause. Defendants are entitled to an entry of judgment in their favor on this claim.

## V. Motion for Injunctive Relief

Zavalunov filed a motion for preliminary injunction setting forth the same claims as those set forth in the complaint in this action. (Doc. 26). The Court finds that Zavalunov cannot meet the heavy burden of establishing that injunctive relief is warranted.

### A. Legal Standard

Inmate *pro se* pleadings which seek emergency relief in the form of preliminary injunctions are governed by Rule 65 of the Federal Rules of Civil Procedure. Preliminary injunctive relief is "an extraordinary remedy" and "should be granted only in limited circumstances." *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (citing *AT&T v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1426-27 (3d Cir. 1994)). In determining whether to grant a motion seeking preliminary injunctive relief, the Court considers the following four factors: (1) the likelihood that the movant will prevail on the merits; (2) the extent to which the movant is being irreparably harmed by the challenged conduct; (3) the extent to which the non-moving party will suffer irreparable harm if the preliminary injunction is issued; and (4) whether granting preliminary injunctive relief will be in the public interest. *S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 374 (3d Cir. 1992) (citing *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 197-98 (3d Cir. 1990)). The Third Circuit clarified this standard. *See Reilly v. City of Harrisburg*, 858 F.3d 173 (3d Cir. 2017). As a threshold matter, the movant must establish the two "most critical" factors:

likelihood of success on the merits and irreparable harm. *Id.* at 179. Under the first factor, the movant must show that "it can win on the merits," which requires a showing that is "significantly better than negligible but not necessarily more likely than not." *Id.* Under the second factor, the movant must establish that it is "more likely than not" to suffer irreparable harm absent the requested relief. *Id.* Only if these "gateway factors" are satisfied may the court consider the third and fourth factors and "determine[] in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id.* at 176, 179.

### B.    Likelihood of Success on the Merits

For the reasons discussed above, the Court finds that the BOP processed the ICE detainer in accordance with BOP Program Statement 5111.04, Institution Hearing Program and BOP Program Statement 5800.15, Correctional Systems Manual. Additionally, Zavalunov was found to be ineligible for RDAP participation and its early release benefits based on his status as a deportable alien. As such, Zavalunov cannot succeed on the merits of his claim.

### C.    Irreparable Harm

Irreparable injury is harm of such an irreversible character that prospective judgment would be "inadequate" to make the moving party whole. *See Anderson v. Davila*, 125 F.3d 148, 163 (3d Cir. 1997); *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801

(3d Cir. 1989). An injunction will not issue "simply to eliminate a possibility of a remote future injury . . . " *Acierno v. New Castle County*, 40 F.3d 645, 655 (3d Cir. 1994) (citations omitted). Zavalunov has not presented any evidence that he will suffer irreparable harm by the denial of the injunctions. On the contrary, Zavalunov can file a habeas petition challenging the ICE detention and deportation orders. *See Ziglar v. Abbassi*, 137 S. Ct. 1843, 1862-63 (2017) (finding injunctive relief and a habeas remedy can constitute alternative methods of relief). Thus, the Court finds that Zavalunov has not shown an immediate, irreparable harm justifying a preliminary injunction.

Because Zavalunov failed to "demonstrate *both* a likelihood of success on the merits and the probability of irreparable harm if relief is not granted," the motion must be denied. *Hohe v. Casey*, 868 F.2d 69, 72 (3d Cir. 1989) (emphasis in original) (quoting *Morton v. Beyer*, 822 F.2d 364, 367 (3d Cir. 1987)).

## VI.    Conclusion

Based on the foregoing, the Court will grant Defendants' motion to dismiss and for summary judgment. The Court will deny Zavalunov's motion for a preliminary injunction.

A separate Order shall issue.

Dated: February 13, 2020

Robert D. Mariani
United States District Judge